# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DARRELL B. WESLEY,

      Petitioner,

v.                                                    Case No. 3:18-cv-1451-TJC-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

## I.   **Status**

Petitioner, Darrell B. Wesley, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. He is proceeding on an Amended Petition. Doc. 8. Petitioner is serving a twenty-year term of incarceration as a Habitual Felony Offender, with a ten-year minimum mandatory term. Respondents filed a Response arguing, inter alia, that the case is untimely filed and request dismissal with prejudice. See generally Doc. 13 (Resp.).[1] Petitioner replied. See Doc. 14. This case is ripe for review.

---

[1] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

## II.   One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of--

>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

2

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## III.  Analysis

On September 23, 2008, a jury found Petitioner guilty of armed robbery, with a special finding that Petitioner actually possessed a firearm during the commission of the offense. Resp. Ex. 3 at 55. On October 27, 2008, the trial court adjudicated Petitioner as a Habitual Felony Offender and sentenced him to a twenty-year term of incarceration, with a ten-year minimum mandatory term. Resp. Ex. 4 at 78-83. Petitioner, with help from appellate counsel, sought a direct appeal, and on November 12, 2009, the First District Court of Appeal per curiam affirmed Petitioner's judgment and sentence without a written opinion. Resp. Ex. 11. Petitioner's judgment and sentence became final ninety days later, on February 10, 2010. Petitioner's one-year statute of limitations began to run the next day, February 11, 2010. His one-year then expired on Friday, February 11, 2011, without Petitioner filing any state postconviction motions that would have tolled his limitations period.

After the expiration of his federal statute of limitations, Petitioner filed with the trial court his first motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 on August 19, 2011. Resp. Ex. 34 at 1; see also State v. Wesley, No. 16-2007-CF-017557 (Fla. 4th Cir. Ct.). Petitioner also filed several amended Rule 3.850 motions afterward. Resp. Ex. 34-36. Because there was no time left to toll, however, Petitioner's motions for postconviction relief did not toll the federal one-year limitations period. See Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) (stating that where a state prisoner files postconviction motions in state court after the AEDPA limitations period has expired, those filings cannot toll the limitations period because "once a deadline has expired, there is nothing left to toll"); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period. A state-court petition like [the petitioner]'s that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). As such, the Petition, filed on December 3, 2018, is untimely filed by more than seven years.

In his Reply, Petitioner acknowledges Respondents' timeliness argument, but he does not argue that he is entitled to equitable tolling, and he fails to allege any facts supporting due diligence or extraordinary circumstances. Doc. 14 at 2 See Lawrence v. Florida, 549 U.S. 327, 336 (2007); Damren v. Florida,

776 F.3d 816, 821 (11th Cir. 2015). However, Petitioner tries to overcome the procedural bar by alleging he is actually innocent of the armed robbery. Doc. 14 at 8. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). To avoid the one-year limitations period based on actual innocence, a petitioner must "present new reliable evidence that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (quotations and citations omitted); see Schlup v. Delo, 513 U.S. 298, 327 (1995) (finding that to make a showing of actual innocence, a petitioner must show "that it is more likely than not that no reasonable juror would have found [the p]etitioner guilty beyond a reasonable doubt").

Seemingly relying on the allegations in his Amended Petition, Petitioner asserts he is innocent because the victim, Yuk Leung, and the victim's sister, Yuk So, misidentified Petitioner in a suggestive, single-person line up, and that his trial counsel was ineffective for inadequately challenging the out-of-court and in-court identifications of Petitioner. See generally Doc. 14. He also

5

contends the state committed a <u>Giglio</u>[2] violation when it permitted Ms. Leung to testify at trial that she saw the assailant's face during the robbery, but during the pretrial hearing on Petitioner's motion to suppress, Ms. Leung testified that she did not see the assailant's face. <u>Id.</u> at 4. The Court finds Petitioner's arguments unpersuasive because he previously, and unsuccessfully, raised these claims in state court.

Notably, prior to trial, Petitioner, with help from trial counsel, moved to suppress Ms. Leung's and Ms. So's pretrial "show-up" identification and any courtroom identification of Petitioner. Resp. Ex. 3 at 26-28. He argued that any out-of-court identification of Petitioner was obtained through impermissibly suggestive procedures creating a substantial likelihood of misidentification. <u>Id.</u> The trial court conducted an extensive hearing on the motion, during which it considered testimony from Ms. Leung, Ms. So, Officer Frank Canady, and Michael Tessema. Resp. Ex. 4 at 96-113; Resp. Ex. 5 at 114-64; Resp. Ex. 6 at 165-86. Both Ms. Leung and Ms. So required an interpreter during the motion hearing. Ms. Leung testified that on the night she was robbed, she and her sister had just left the restaurant where they worked and stopped at a nearby Chevron station. Resp. Ex. 4 at 101. Ms. Leung explained that as she was following her sister out of the station, a man similar in appearance to Petitioner

_____

[2] <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

pushed her down and forcefully took her purse. Id. at 102-05. She explained that the assailant was a black male wearing dark blue or black shorts and a white shirt. Id. at 104-07. After taking her purse, the assailant ran away and Ms. Leung chased after him. Id. at 105-09. She stated that a man and woman driving by saw her chasing the man, so they stopped to help and Ms. Leung got into their car and the woman called 911. Id. at 109-10. About ten to twenty minutes later, the police contacted Ms. Leung and asked her to come identify a man they apprehended. Id. at 111. When she arrived, police had Petitioner in custody. Id. Petitioner was not wearing a shirt and only had on shorts. Id. Police asked Ms. Leung if Petitioner was the individual who robbed her, and as she was standing about ten to fifteen feet away, she identified Petitioner as the assailant. Id. at 113.

Ms. Leung first testified that as the assailant was robbing her, she did not see his face, nor did she get a good visual of his face during her pursuit of him on foot. Id. at 104, 113. But she later testified that before she left work that night and before the robbery, she saw Petitioner standing outside of her restaurant. Resp. Ex. 5 at 114. And of more import, later in her testimony, the interpreter conveyed that Ms. Leung misunderstood the prosecutor's questions about whether she saw Petitioner's face, to which Ms. Leung testified, "I have seen his face. At the time of the restaurant when he was standing outside the restaurant. I saw his face. I saw his face when the cops arrested him. So I saw

his face barely when I was chasing him and he turn[ed] around." <u>Id.</u> at 117. Ms. Leung also explained that when she made the identification, Petitioner had the same body shape and shorts as the individual who robbed her. <u>Id.</u> at 128.

Ms. So also testified at the motion hearing that she witnessed her sister being robbed by a black male wearing a white shirt and shorts. <u>Id.</u> at 132. Ms. So explained that after the robbery, police asked her to identify an individual they apprehended, and she identified Petitioner as the assailant. <u>Id.</u> at 140.  She stated that she "didn't quite see his face" during the robbery, but she knew "who he was because [she saw] him in the restaurant" earlier that evening and recognized his face, body shape, and clothing. <u>Id.</u> at 133, 137. The trial court denied Petitioner's motion to suppress, announcing its ruling on the record and explaining that it considered the factors set forth in <u>Neil v. Biggers</u>, 409 U.S. 188 (1972). Resp. Ex. 6 at 184-86.

At trial, Ms. Leung provided testimony consistent with her testimony at the suppression hearing. Resp. Ex. 7 at 163. The state also presented testimony from Chandra Oliver and Andre McQueen who explained that on the night of the incident, they saw Ms. Leung running down the street waving her arms, so they stopped their car to help. <u>Id.</u> at 115-18, 135. According to Mr. McQueen, Ms. Leung advised him that the man she was chasing stole her purse, so Mr. McQueen drove up to the man and noticed a bulge under his clothing which may have been large enough to be a purse. <u>Id.</u> at 155-56. When Mr. McQueen

tried to ask the man about the purse, Mr. McQueen saw that the man had a gun, so Mr. McQueen drove away. Id. at 137-38. Officer Gonzalez testified at trial that as he was responding to the 911 dispatch on the night of the robbery, he drove past Petitioner who was walking and witnessed Petitioner throw a white item into a ditch. Resp. Ex. 8 at 223. Officer Gonzalez then notified Officer Canaday about Petitioner before getting out of his patrol car and finding that Petitioner had thrown a silver semi-automatic handgun, a white shirt, and a purse into the ditch. Id. at 224. In response to Officer Gonzalez's call and because Petitioner matched the 911 dispatch description, Officer Canaday then apprehended Petitioner and presented him for the victim's identification. Id. at 236-40.

Petitioner testified at trial that on the night he was arrested, he had just left his "significant other's" house and was walking to a nearby gas station. Id. at 275. Petitioner stated he was not wearing a shirt that night because it was hot outside. Id. at 273. According to Petitioner, as he was walking, he saw another male take his shirt off and throw it, so Petitioner went to see what the man had thrown. Id. at 276. Petitioner explained that he picked up the thrown items for a "split-second" and then police apprehended him. Id. at 275.

Following trial, and as his sole claim on direct appeal, Petitioner argued that the trial court erred in denying his motion to suppress evidence of his pretrial "show-up" identification. Resp. Ex. 9. The state filed an answer brief

addressing Petitioner's claim on the merits, Resp. Ex. 10, and the First DCA affirmed the trial court's ruling and Petitioner's judgment of conviction, Resp. Ex. 11. Thereafter, Petitioner collaterally attacked his conviction in his Rule 3.850 motion, raising eight grounds for relief including a claim that trial counsel was ineffective for inadequately challenging pretrial identification evidence and that the state committed a <u>Giglio</u> violation when it allowed the victim to present false trial testimony. Resp. Ex. 35 at 321-32. The trial court denied Petitioner's Rule 3.850 motion, <u>id.</u>, and the First DCA per curiam affirmed the denial without a written opinion, Resp. Ex. 40.

Petitioner now attempts to reiterate his previously rejected claims to overcome the procedural time bar. But he has not produced exculpatory evidence, trustworthy eyewitness accounts, or critical physical evidence not previously available. He has failed to point to any evidence to show it is more likely than not that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt because of new evidence. Thus, the Court rejects Petitioner's actual innocence argument. The case is due to be dismissed as untimely.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.      The Amended Petition (Doc. 8) and this case are **DISMISSED with prejudice**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[3]

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of December, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:     Darrell Wesley, #J37567
        counsel of record

---

[3] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.